### YUMBO, S. A. v. DADE COUNTY.
No. 75-32407.

Circuit Court, Dade County.

May 13, 1976.

John G. Fletcher, Miami, for the petitioner.

Stuart L. Simon, County Attorney, Stanley B. Price, Assistant County Attorney, for the respondent.

HAROLD R. VANN, Circuit Judge.

The above styled cause came on to be heard before this court on April 22, 1976. In regard thereto, the court has considered the briefs, the record and the oral argument of the attorneys representing the parties. After due consideration by this court, the following order is entered granting the petitioner's petition for a writ of certiorari directed to Dade County.

### FINDINGS OF FACT

Yumbo, S.A., is the owner of a four hundred acre tract lying in Section 33, Township 56 South, Range 40 East, in Dade County.

The property is located between Southwest 264th Street and Southwest 280th Street, and between Southwest 97th Avenue and Biscayne Bay.

In preparing for the possible and potential development of the subject property, the owner on November 3, 1974 filed with Dade County an application for a rezoning of the property from the GU (interim) zoning category to a multi-family category. That application included a letter of intent which indicated extensive analysis of the area not only by the owner, but by the staff of the board of trustees of the Internal Improvement Trust Fund. A vegetation map to determine the extent of the existing mangrove growth and a spot elevation map to determine the mean high water line were prepared so that an ecologically satisfactory development could be suggested to the Dade County zoning authorities. As a result of these studies and in an attempt to comply with all ecological requirements, the owner is offering to give up more than two-thirds of its land and sacrifice the projected marina which the former Dade County Master Plan suggested to be reasonable in the area. The result is an avoidance of land disturbance where ecologically necessary.

As part of its plan for the development of the property, the owner developed a new type of habitat concept for this project. The main objective of this new concept is a complete emphasis on preserving the natural aspects of the tract. Each dwelling unit in the project is proposed to be raised on stilts and become a floating garden. The plan provides for the drainage from parking lots to go into a natural cleaning pond, into the open space areas, which will be left in their natural condition.

As to facilities for the development of the project, water and sewer can be made available through Rex Utilities, Inc. The engineers of that company had been consulted by the developer and they advised the developer that the necessary service could be provided. A fire station, security guard station and medical facilities will be provided by the owner, should the public protection facilities not be available by the time this property is to be developed. It would appear that since the development is in a series of six phases, public services would be available by the time they were needed. Even if public services were not available, however, as will be discussed later on herein, such should not at this time affect the rezoning application. The master plan for the property reveals that a large mangrove park of approximately three hundred acres, nature trails, raised and covered canopy walks, fishing piers, and picnic grounds are included for the use of the public.

The overall density for the project requested is 3.86 units per acre with green area and open space predominant throughout the entire project. A shopping center, clubhouses with tennis courts and swimming pools, raised dwelling units and existing natural landscaping, appear to be well thought out in an attempt to provide a model for what can be described as an ecologically satisfactory development. It would appear, therefore, that the RU-TH, RU-4L, BU-2 rezoning requests appear to be responsibly thought out.

On September 10, 1975 the application for rezoning was submitted to Dade County for public hearing. On that date the county commission by resolution denied the application for rezoning with prejudice, thus leaving on the subject tract the GU category. The county commission acted in response to recommendations of the building and zoning departments and of the planning department in which denial with prejudice was recommended. The reasons for the recommendations of denial from the departments were —

1. The requested zoning would be in direct conflict with a 1985 Comprehensive Development Master Plan, which indicates the property as being in a preservation area;

2. The property's proximity to Homestead Air Force Base, resulting in overflights by Homestead Air Force personnel; and

3. Insufficient public facilities are available for development at this time.

Each of these three reasons will be discussed individually and examined as to their viability for a refulsal of rezoning.

### PRESERVATION AREA

The record reveals that the subject property has been designated by Dade County as part of a "preservation area". (R. 19). This preservation area and many others located throughout Dade County have been established by the Dade County Comprehensive Development Master Plan. In Part Two of that Master Plan, the various recommended uses for preservation areas are set forth. The uses set forth are limited and may be found as applicable to this property at page 117 of Part Two of the Comprehensive Development Master Plan of Dade County, to wit —

> "The range of uses within this sub-zone as it relates to the value and present condition of the area is much the same as other preservation areas. Thus activities which would not upset the natural balance might include hunting, fishing, other forms of passive recreation, and use of the area for camping or as a wild life habitat."

We thus find that the Master Plan recommends uses for privately owned property which are not compatible therewith, but which are compatible with public ownership of property.

The subject tract is not the only tract in Dade County that the county commission is attempting to place into preservation, conservation, or environmentally sensitive areas and to severely restrict development thereof. A study of the Comprehensive Development Master Plan submitted into evidence by Dade County in this case reveals that thousands upon thousands of acres of land in Dade County are being set aside by the county government for park and recreational purposes, notwithstanding that these properties are in private ownership and not in public ownership. It is not incumbent upon this court at this time to pass upon the validity of the Master Plan as it applies to all of the property in Dade County, but only as that Master Plan has been applied by the county commission through the zoning process to the subject property.

In relation to the subject property, it can be seen from the record, without doubt, that Dade County is attempting to retain open space owned by a private concern for the benefit of all of the citizens of Dade County. It has taken the rights of the petitioner and converted them into the rights of the other individuals in Dade County. Such activity on the part of the county commission is prohibited. The Third District Court of Appeal, in *New Products Corp. v. City of North Miami*, 271 So.2d 24 (Fla. App. 1972), struck down an attempt by the city of North Miami to preserve as an open park under a zoning classification land which was in private ownership. At page 25 the Third District Court stated —

> "The present status of the subject parcel is untenable. It is now zoned for public park use only and is owned by a private party. This zoning classification is totally inconsistent with the ownership of the property. As such, it is the duty of the city to rezone the property in a manner consistent with its ownership."

Just so, the county's placing this property in a preservation zone and prohibiting any private use thereon or, any reasonable private use theeron, is confiscatory.

### AVIGATIONAL EASEMENTS

In addition to attempting to preserve the property as open space for the recreation of the people of Dade County, the county has also prohibited the use of the property, at least in a reasonable fashion by the owner, for the benefit of the Homestead Air Force Base. At page 21 of the record in this case, may be found within the recommendation of the planning director for denial with prejudice, the following —

"The major runway of the Homestead Air Force Base goes right over the property. This entire proposed 400 plus or minus acre development of 2,000 residential units is within the noise exposure forecast 40 contour which states that no new housing would be permitted in this zone."

By following the recommendation of Mr. Reginald Walters, the director of the planning department, Dade County has taken from the property owner an avigational easement cross the subject tract for the benefit of the public. Such takings are compensable when raised in an inverse condemnation suit. *U.S. v. Causeby*, 328 U.S. 256, 66 S. Ct. 1062, 90 L.Ed.1206 (1946); *Hillsboro County Aviation Authority v. Benitez*, 200 So.2d 194 (Fla. App. 1967), cert. denied, 204 So.2d 328 (Fla. 1967). The fact that in the just cited cases the housing existed prior to the overflight does not make this any less a taking situation. The petitioner is losing the use of his property just as if Dade County came out and built a wall around the property and used it for a public dump.

Notwithstanding the wording of the Comprehensive Development Master Plan Part II which specifically recommends public use of private property, and notwithstanding the recommendation of the planning and building and zoning departments that no housing at all be permitted on the subject property, the respondent takes the position that the property owner may develop under the GU (interim) zoning category, one home for every five acres. The county would further state that such type of development is a rational and reasonable one. The petitioner, however, has pointed out various sections of the Dade County Code which prohibit any development whatsoever of the subject tract.

Section 33-197, Dade County Code, which relates to the GU zoning category, states as follows —

"Before a new subdivision may be recorded in a GU District, except for cemeteries, new district classifications shall be assigned by the Zoning Board after public hearing."

In other words, if a developer wishes to develop his property and build one home for every five acres that he owns, he must either do so without subdividing or he must receive a new zoning district so that he can be permitted to subdivide and develop. The question then becomes whether or not this owner can develop the subject property without subdividing the property.

Turning to the record to answer the question whether or not the property must be subdivided prior to development, we find at R.29,

the following statement from Mr. William M. Powell, assistant director of the Dade County Public Works Department as it relates to this matter —

> "This is to advise you that this land must be platted. The road planning committee required that 100' of right of way be dedicated for Southwest 97th Avenue as shown on Plan. A four lane bridge over the Southwest 97th Avenue canal at Moody Drive and the improvements for Moody Drive between 97th and 107th Avenues are also required."

We thus find that the department requires that the property be platted before it can be developed. We also find that the department requires the dedication of public streets and the building of a public bridge for dedication to the public before the property can be developed. Platting of property of course, is a type of subdividing of property. In conjunction therewith the petitioner has filed a copy of Section 28-1 (i), (ii), Dade County Code. Subsection (ii) reads as follows —

> "The dedication of a road, highway, street, alley, easement through or on a tract of land regardless of area,"

is a form of subdivision. We thus find that the developer in this situation cannot plat his property until he has it rezoned from the GU category. Thus in the present situation the developer is totally prohibited from any use of his property, including the ostensible one-home-for-five-acre development which the respondent erroneously claims is possible.

There is no doubt but that Dade County, under its zoning powers, may place reasonable restrictions on the use of property. However, where restrictions exceed the boundaries of reasonableness they must fall.

### AVAILABILITY OF PUBLIC FACILITIES

The county additionally defends its denial of a rezoning on the subject tract on the basis that there are insufficient public facilities available to serve the subject property. The county takes the position that it does not want areas of the county to develop until the county is prepared to serve those areas with water, sewer, and other public facilities. This may be a laudable goal in a utopian society where government is prepared within a reasonable period of time to provide those facilities upon which development must wait. However, the use of the zoning process to inhibit development until such time as the county is prepared to fulfill property development needs presents a "Catch 22" situation. In other words, if the county is correct, one cannot obtain zoning until one has public services.

But on the other hand, if one does not have zoning and the property is not being used, then there is no need for public services. To avoid this "Catch 22" situation, the immediate availability of governmental services should not be considered in a zoning process. The true purpose of zoning law is to categorize property for its most reasonable potential use in the future. If, after receiving the zoning, the public facilities are not available, then the developer may be detained from developing until they are available through the building permit process. The South Florida Building Code and other provisions of the Dade County Code ranging from its pollution control to subdivision sections, provide ample opportunities for Dade County to be assured that all human needs through public services will be provided for.

In this modern age of development, the burden for providing public services falls generally upon the developer himself. Dade County's sophisticated planning and zoning processes as well as its subdivision code, place this burden upon the property owner. However, where a property owner is denied a reasonable zoning category for future potential use, he is placed in an untenable situation. He cannot initiate contracts for water and sewer service because he cannot be aware of the gallonage that he will need to provide for servicing the needs of the people who are to live on his property. It denies the developer the opportunity to provide school sites, park sites, fire station sites, police station sites, which will lead to the public facilities being available, as he cannot know the size of the site which would be reasonably required. In short and simple terms, he cannot obtain zoning because he does not have the public facilities, and he cannot obtain the public facilities because he does not have the zoning. By removing from the zoning process the question of the immediacy of public facilities, we take the developer from this intolerable situation and place him in a more reasonable one. Granted reasonable zoning, he can prepare for the future needs of the community or of the area that he is to develop. The county is placed in a satisfactory situation of controlling his ultimate developments through the building permit and other processes of government administration.

### RELIEF GRANTED

This court is aware that it is ordinarily the duty of a court reviewing zoning legislation not to substitute its judgment for that of the zoning authority, but only to see that the category which has been placed upon the property by that zoning authority is not unconstitutionally confiscatory. As stated, this is the ordinary scope of review in zoning legislation acts, however, Dade County has over

the years laboriously devised a system whereby zoning, i.e., the categories applied to specific parcels of property, is no longer in the legislative category, but rather has become a quasi-judicial function. *Dade County v. Marca*, 326 So.2d 182 (Fla. 1976); *Centex Home Corp. v. Metropolitan Dade County*, 318 So.2d 149 (Fla. App. 1975); *Dade County v. Metro Improvement Corp.*, 190 So.2d 202 (Fla. App. 1966); *Dade County v. Carmichael*, 165 So. 2d 227 (Fla. App. 1964); *Sunray Homes, Inc. v. County of Dade*, 166 So.2d 827 (Fla. App. 1964); *Baker v. Metropolitan Dade County*, 237 So.2d 201 (Fla. App. 1970). As such, the substantial competent evidence rule must prevail in determining what action should have been taken by the county commission on the evidence before it.

The only evidence before the county commission was that submitted by the petitioner and that submitted by the planning and building departments in response thereto. As has been shown throughout this order, the evidence presented by the planning department and the building and zoning department was evidence which was not properly before the county commission. The items presented did not relate to a proper exercise of the zoning power of Dade County and as a consequence should not have been considered by the county commission. Under that circumstance, the only substantial, competent evidence before the county commission was that presented by the property owner through his attorney and through his witnesses.

Accordingly, the county commission should have taken the facts presented to it by the owner, applied them to the zoning categories of Dade County, and arrived at an appropriate zoning classification predicated solely upon the substantial, competent evidence before that body. The only rational conclusion that the commission could have reached, and should legally have reached, was to grant the application as submitted to it.

Accordingly, it is ordered and adjudged —

1. That this order is a writ of certiorari directed to Dade County, instructing that body to rezone the property which is the subject of this application in accordance with the request of the property owner as submitted to the county commission.

2. That Dade County shall take the necessary steps to rezone the subject properties and grant the other relief sought by the applicant in accordance with its application within thirty days from the date of the entry of this order.

3. The court reserves jurisdiction for the purpose of taxing costs against Dade County.